**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**September 8, 2021**

# In the Court of Appeals of Georgia

A21A0921. COPELAND v. COPELAND.

DOYLE, Presiding Judge.

John Copeland, Sr. ("father") appeals the entry of a 12-month family violence temporary protective order ("TPO") entered against him in favor of his ex-wife ("mother"), arguing that the evidence was insufficient to support the TPO, that the trial court lacked authority to issue the TPO because no hearing was held within 30 days after the mother filed the petition, and that the TPO was longer than that permitted by law. For the reasons that follow, we affirm.

"The grant or denial of a motion for protective order generally lies within the sound discretion of the trial court and will not be reversed absent an abuse of that

discretion."[1] So viewed, the record shows that the parents divorced in 2015. On May 14, 2020, the father arrived at the mother's home to pick up their two children for his court-ordered visitation. Because of the COVID-19 pandemic, the children were participating in distance learning at the mother's home. The father rang the doorbell, and the mother sent the children outside to him. Shortly thereafter, the parties' 10-year-old daughter, S. C., returned to the house at the father's instruction to retrieve her math workbook. The mother sent S. C. back out with her math packet, but she returned, stating that the father insisted she get her workbook. The father then "began to raise his voice," and he called the mother "a terrible person, . . . a horrible mother" in front of S. C., who the mother described as "quite upset and . . . very uncomfortable." The mother sent S. C. back inside.

The father looked as though he was "extraordinarily angry, extraordinarily hateful," a look that the mother described as one that had "ended upon in physical violence" in the past." He began yelling, "getting closer and closer to the door," and, feeling unsafe, the mother went inside and closed and dead-bolted the door. The father then struck the door "hard." The mother presumed that he kicked the door, but

---

[1] (Citation and punctuation omitted.) *Martin v. Woodyard*, 313 Ga. App. 797, 799 (723 SE2d 293) (2012).

she could not see what he did because the blinds on the door were closed; in any case, the "blow" was "very forceful." A header that was attached to the top of the wood blinds on the inside of the door "crashed" to the floor, the bottom section of the blinds became completely detached, and the door made a "cracking" sound and was damaged. The father repeatedly yelled that the mother was a "whore," and he again referred to her as a "horrible woman, and . . . a horrible mother." J. C. observed the entire incident from the father's vehicle. The mother opened the door and told the father that if he did not leave, she was going to call the police. According to the mother, the father approached her in a threatening posture, and she was fearful given his history of violence toward her. She allowed the children to go with the father after the incident because she did not believe she had the legal right to interfere with his custody and did not believe he posed any physical danger to the children. The mother had "no doubt . . . that [the father] intended to harm [her]. . . . [He] would and will harm [her] if he is given the opportunity. . . . This is a clear pattern of behavior."[2]

The father testified that he did not kick the door, that he had only knocked on it, and that he heard something hit the floor when the mother "slammed the door." He

---

[2] The mother recounted an incident during the parties' marriage when the father attacked her, kicked her repeatedly, and threatened to kill her and beat her repeatedly if she called the police.

denied having walked toward her in a threatening manner or calling her a whore, saying that he only called her "horrible" and then left the premises.

On May 15, 2020, the mother filed a verified petition for TPO pursuant to the Family Violence Act (OCGA § 19-13-1 et seq.), alleging that on the previous day the father had become angry about the child's workbook; that the front door had been violently hit, presumably by the father kicking the door; that the impact caused part of the blinds on the door to break; that the father yelled that the mother was a whore and a horrible mother; that their son witnessed the incident; that the mother told the father to stop and leave or she would call the police; and that the father continued to berate her. The mother alleged that she was in reasonable fear for her safety and/or the safety of the children, who were in her custody, adding that the father had a history of verbal and physical violence and that there was a substantial likelihood that he would commit such acts of violence in the future if relief was not granted. She requested that the court issue an ex parte protective order and 12-month protective order restraining the father from having direct contact with her and/or the children, awarding her temporary sole legal and physical custody of the children, and allowing the father no visitation until a hearing was held on the matter.

On May 15, 2020, following an ex parte hearing with the mother conducted via videoconferencing or "Zoom," the trial court granted her petition. The court found probable cause that family violence occurred in the past and may occur in the future; ordered the father to appear for a hearing on June 10, 2020; enjoined the father from, among other things, threatening or abusing the mother and/or children and approaching them until further order of the court; and awarded temporary custody to the mother.

On June 16, 2020, the father filed a "Motion for Expedited Zoom Hearing and Motion to Reinstate 30-day Hearing Deadline Pursuant to OCGA § 19-13-3 (c)." In it, the father acknowledged the Supreme Court of Georgia's statewide judicial emergency declaration which granted relief from civil and criminal case deadlines and schedules.[3] Nevertheless, he requested that the 30-day hearing deadline on ex parte petitions set out in OCGA § 19-13-3 (c) be reinstated and that the court conduct

---

[3] On March 14, 2020, pursuant to OCGA § 38-3-62 and citing the public health emergency presented by the COVID-19 pandemic, Georgia Supreme Court Chief Justice Harold Melton issued an order declaring a statewide judicial emergency. Among other things, the judicial emergency declaration suspended, tolled, extended and otherwise granted relief from any deadlines or time schedules in civil and criminal cases. The order was set to expire on April 13, 2020, but was extended several times, most notably on July 10, 2020, and August 11, 2020. The judicial emergency orders are included in Exh. 11 of the application record, and they may also be viewed at the Georgia Supreme Court's website, www.gasupreme.us.

a hearing in the case via Zoom or similar service as soon as possible. The trial court denied the motion, stating that the matter would be set for an in-person hearing on the 12-month petition after the court safely reopened.[4]

On August 4, 2020, the father filed a motion to dismiss the ex parte order on the basis that a hearing had not been held within 30 days. On August 14, 2020, with the parties appearing by video, the court conducted an evidentiary hearing on the mother's 12-month petition. The court granted the petition and entered a 12-month family violence TPO on August 17, 2020. The court found that the father had committed family violence, placed the mother in reasonable fear for her safety and represented a credible threat to the physical safety of her and/or the children. The court enjoined the father from, among other things, threatening or harming the mother and/or the children and ordered him to stay away from the mother's home; the court awarded temporary custody of the children to the mother with visitation by the father as specified, and ordered the father to participate in a family violence intervention program.

On September 1, 2020, the father filed a motion for reconsideration and/or clarification of the 12-month TPO, arguing that the ex parte order had been pending

---

[4] The mother did not object to the father's motion for an expedited hearing.

since May 15, 2020, and he asked the court to dismiss the 12-month petition or to shorten the term of the 12-month TPO to three months. On October 5, 2020, the court entered an order denying the motion for reconsideration, denying the request to shorten the term of the TPO, and clarifying certain provisions regarding the father's participation in the children's activities.

The father filed an application for discretionary review, which was granted, and this appeal followed.

1. The father contends that the trial court abused its discretion by entering the TPO because the evidence was insufficient to prove that he committed any acts of family violence. We disagree.

Pursuant to OCGA § 19-13-3 (a), a person may seek a family violence protective order by filing a petition asserting an act of family violence. Family violence pertinently includes the "[c]ommission of battery, simple battery, simple assault, assault, stalking, criminal damage to property, unlawful restraint, or criminal trespass."[5] "Upon the filing of a verified petition in which the petitioner alleges with specific facts that probable cause exists to establish that family violence has occurred

_____

[5] See OCGA § 19-13-1 (2).

in the past and may occur in the future, the court may order such temporary relief ex parte[.]"[6] "Within ten days of the filing of the petition . . . or as soon as practical thereafter, but not later than 30 days after the filing of the petition, a hearing shall be held at which the petitioner must prove the allegations of the petition by a preponderance of the evidence as in other civil cases."[7] A trial court has discretion in granting or denying a protective order, and we will not interfere with the court's ruling absent an abuse of that discretion.[8] "An abuse of discretion occurs when a ruling is unsupported by any evidence of record or where that ruling misstates or misapplies the relevant law."[9]

Here, while the parties gave conflicting accounts of what occurred, there was some evidence that the father kicked the door, approached the mother in a threatening manner, damaged her property, used abusive language toward her in the children's presence, was abusive toward her in the past, and caused her to be fearful for her or

---

[6] OCGA § 19-13-3 (b).

[7] OCGA § 19-13-3 (c).

[8] See *Quinby v. Rausch*, 300 Ga. App. 424 (685 SE2d 395) (2009).

[9] (Citations and punctuation omitted.) *Lewis v. Lewis*, 316 Ga. App. 67, 68 (728 SE2d 741) (2012).

8

the children's safety. The trial court was within its discretion to believe the mother's testimony and to find that the father had committed an act of family violence in the past and may do so in the future.[10]

2. The father argues that the trial court lacked authority to issue the 12-month TPO because no hearing was held within 30 days after the mother filed the petition for a protective order. This enumeration is without merit.

OCGA § 19-13-3 (b) provides that the trial court may grant temporary ex parte relief as it deems necessary to protect the petitioner or a member of the household from violence and that the order shall remain in effect until the court issues an order dismissing the order or holds a hearing at which the petitioner must prove the allegations by a preponderance of the evidence. Pursuant to OCGA § 19-13-3 (c), a hearing must be held no later than 30 days after the petition is filed, and if a hearing is not held within 30 days, the petition shall be dismissed unless the parties otherwise agree.

At the same time, pursuant to OCGA § 38-3-62, "[a]n authorized judicial official in an order declaring a judicial emergency . . . is authorized to suspend, toll,

---

[10] See *Quinby*, 300 Ga. App. at 426 (affirming conviction for stalking because there was "reasonable evidence to support the trial court's conclusion").

9

extend, or otherwise grant relief from deadlines or other time schedules or filing requirements imposed by otherwise applicable statutes, rules, regulations, or court orders, whether in civil or criminal cases[.]" As discussed in footnote 2, supra, the Chief Justice of the Supreme Court of Georgia declared a statewide judicial emergency and issued an order in March 2020 (the March 2020 order was extended several times, including beyond the August 2020 hearing date) that affected judicial time frames in all Georgia courts, suspending and tolling the deadlines imposed on courts in civil and criminal cases.[11]

Significantly, the judicial emergency order (initially and/or as extended) instructed that, "[t]o the extent feasible, courts should remain open to address essential functions, and in particular[,] courts should give priority to matters necessary to protect health, safety and liberty of individuals" and explained that "domestic abuse temporary protective orders and restraining orders" are essential functions; it added that courts should use technology to conduct remote judicial proceedings as a safer alternative to in-person proceedings. However, the judicial emergency order did not *mandate* that the courts conduct hearings (virtual or

---

[11] See Supreme Court of Georgia, Fourth Order Extending Declaration of Statewide Judicial Emergency (July 10, 2020) (especially Section II (B)).

10

otherwise) in all such cases during the judicial emergency period. Instead, the judicial emergency order recommended certain procedures and vested trial courts with broad discretion as to how and when they will conduct hearings and trials. The cases upon which the father relies do not involve the failure to hold a hearing within 30 days when the 30-day period is subject to a judicial emergency order that tolls or suspends such deadlines.[12] Notably, the father's assertion that the automatic dismissal provision of OCGA § 19-13-3 (c) is subject to a single exception (i.e., agreement of the parties) does not show error by the trial court here because that provision indicates that dismissal is not automatic under all circumstances. Accordingly, we find meritless the father's position that the court's failure to conduct a hearing within 30 days resulted in automatic dismissal given that the judicial emergency order in this case remained in effect during (and beyond) the entire 30-day period.

3. Finally, the father contends that the trial court lacked authority to enter a 15-month protective order. He asserts that the court entered the ex parte TPO on May 15, 2020, and then extended it until August 13, 2021, effectively entering a 15-month

[12] See, e. g., *Herbert v. Jordan*, 348 Ga. App. 538, 539 (1) (823 SE2d 852) (2019). Compare *Smith v. Smith*, 350 Ga. App. 647, 649 (829 SE2d 886) (2019) (holding that ex parte TPO was dismissed by operation of law because although the 30-day hearing requirement was not met, a declaration of judicial emergency had ended *before the 30-day time limit expired*).

order, which order conflicts with OCGA § 19-13-4 (c), which has a one-year limit for a family violence TPO.[13] We disagree.

The trial court did not grant a 15-month order. The mother filed the verified petition for TPO pursuant to OCGA § 19-13-1 et seq. alleging specific facts showing family violence and requesting that the court set a hearing no later than 30 days from the May 15, 2020 filing date. Pursuant to OCGA § 19-13-3 (b), the court granted the mother temporary ex parte relief, as it was authorized to do, and a hearing date was scheduled for June 10, 2020. The ex parte order remained in effect until the court issued a dismissal order or until a hearing was held at which the mother was required to prove her allegations by a preponderance of the evidence.[14] As discussed above, the judicial emergency declaration (authorized by OCGA § 38-3-62) tolled schedules and deadlines imposed on courts beginning in March 2020 and continuing beyond the August 2020 hearing date. After the August 2020 hearing, the court entered a 12-month TPO, as it was authorized to do under OCGA § 19-13-4 (c). The father cites

[13] OCGA § 19-13-4 (c) provides: "Any order granted under this Code section shall remain in effect for up to one year; provided, however, that upon the motion of a petitioner and notice to the respondent and after a hearing, the court in its discretion may convert a temporary order granted under this Code section to an order effective for not more than three years or to a permanent order."

[14] See OCGA § 19-13-3 (b).

no authority holding that a 12-month TPO must take effect on the date the initial (ex parte) TPO was entered. Under the circumstances presented in this case, including the judicial emergency declaration that affected the scheduling of hearings, the trial court did not err by entering the TPO.

*Judgment affirmed. Reese and Brown, JJ., concur.*