## A09A1816. QUINBY v. RAUSCH.
(685 SE2d 395)

MIKELL, Judge.

Christian J. Rausch filed a petition for a family violence protective order against his ex-wife, Susan T. Quinby, which the trial court granted.[1] On appeal, Quinby argues that the trial court's order should be reversed because there was no evidence that she committed any of the underlying predicate acts required to authorize the entry of a protective order against her. We disagree and affirm.

"[T]he grant or denial of a motion for protective order generally lies within the sound discretion of the trial court. Accordingly, we will not reverse absent an abuse of that discretion."[2] At the hearing on the petition in the instant case, Rausch testified that Quinby visited his place of employment to harass him and left only after he threatened to call the police; that Quinby told him that she could cause problems for him at work because she knew his boss; that she sent him several text messages threatening to have him incarcerated; and that Quinby had him followed during the summer of 2008. Rausch testified that he approached the person who was following him then filed a police report that same day to report the incident. The court admitted evidence showing that Rausch had reported appellant's conduct to the police and listened to several cell phone voice mail messages that Quinby left on Rausch's phone.[3]

On cross-examination, Rausch admitted that Quinby had not committed any act of violence against him or their child. Additionally, Rausch testified that he did not fear that she would hit him but stated that she threatened to hit him. Rausch testified as follows: "I get your behind. That's a threat in my opinion. I don't know how she gets me because she obviously had stalked me with people. I don't know what those people are going to do. I have no idea. I don't want to speculate on it."

---

[1] We granted Quinby's application for discretionary appeal.

[2] (Citation omitted.) *Rawcliffe v. Rawcliffe*, 283 Ga. App. 264, 265 (1) (641 SE2d 255) (2007).

[3] The cell phone messages were not transcribed.

Quinby testified that she visited Rausch's place of employment to give him a plant that their child made for him and to return jewelry that he had given her. Quinby admitted that she hired a private investigator to follow Rausch over the course of two weekends after their son had come home upset and distressed after visiting Rausch. At the conclusion of the hearing, the trial court granted the protective order, restraining appellant from communicating with Rausch or coming within 100 yards of him, except to drop off or pick up their minor child. Quinby maintains that the trial court erred.

The Family Violence Act is codified at OCGA § 19-13-1 et seq. Pursuant to OCGA § 19-13-1,

> the term "family violence" means the occurrence of one or more of the following acts between past or present spouses [or] persons who are parents of the same child . . . (1) [a]ny felony; or (2) [c]ommission of offenses of battery, simple battery, simple assault, assault, stalking, criminal damage to property, unlawful restraint, or criminal trespass.[4]

Rausch argues that the entry of the protective order was appropriate because Quinby's actions were tantamount to stalking.

Upon review of protective orders under the Family Violence Act,

> it is not this Court's function to second-guess the trial court in cases such as this, which turn largely on questions of credibility and judgments. The trial court is in the best position to make determinations on these issues, and we will not overrule its judgment if there is any reasonable evidence to support it.[5]

Pursuant to OCGA § 16-5-90 (a) (1),

> [a] person commits the offense of stalking when he or she follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person. . . . For the purposes of this article, the term "harassing and intimidating" means a knowing and willful course of conduct directed at a specific person which causes emotional distress by placing such person in reasonable fear for such person's safety or the safety of a member

---

[4] See also *Williams v. Jones*, 291 Ga. App. 395, 396 (662 SE2d 195) (2008).

[5] (Citation omitted.) *Rawcliffe*, supra.

of his or her immediate family, by establishing a pattern of harassing and intimidating behavior, and which serves no legitimate purpose.

Quinby admitted that she hired a private investigator to follow Rausch. As stated earlier, Rausch testified that he knew he was being followed and stated, "I don't know what those people are going to do. I have no idea. I don't want to speculate on it." Quinby argues that this testimony shows that there was no evidence that Rausch feared bodily harm or death as is required by the stalking statute. However, the opposite conclusion could just as easily be inferred. From this evidence, the trial court could have inferred that Rausch feared bodily harm or death when he discovered that he was being followed.

As stated earlier, we must affirm if there is any reasonable evidence to support the trial court's conclusion. There was evidence from which the trial court could have inferred that Rausch established by a preponderance of the evidence that Quinby committed the predicate act of stalking, which supports the entry of a protective order pursuant to OCGA § 19-13-1.[6] The cases cited by Quinby do not warrant a different result.[7] Accordingly, we affirm the judgment of the trial court.

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED OCTOBER 8, 2009.

*James S. Altman, for appellant.*
*Frances E. Pace, E. Earle Burke, for appellee.*

---

[6] See *Sinclair v. Daly*, 295 Ga. App. 613, 614 (672 SE2d 672) (2009).

[7] Id. at 615 (protective order reversed where testimonial evidence of victim went to his concern for the defendant's mental health rather than fear for the victim's safety); *In the Interest of C. C.*, 280 Ga. App. 590, 591-592 (1) (634 SE2d 532) (2006) (evidence that the defendant drove into the alleged victims' driveway and sat in front of their house for a minute and a half in addition to lack of testimony from victims that they were afraid or suffered emotional distress held insufficient to support charge of stalking).