**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**November 21, 2012**

# In the Court of Appeals of Georgia

A12A1363. PERLMAN v. PERLMAN.

MCFADDEN, Judge.

Scott Perlman (the father) appeals from two judgments: one dismissing the ex parte temporary family violence protective orders that he had obtained on behalf of his two minor daughters against their mother, Rachel Perlman (the mother); and the other dismissing his petition for change in the girls' custody to him. As to the family violence orders, we find that the trial court was authorized to disbelieve the evidence elicited by the father and therefore to dismiss the ex parte family violence protective orders; and those ex parte orders have, in any event, long since expired as a matter of law. And we find that the trial court did not err in refusing to admit certain photographs into evidence at the hearing on the protective orders. As to the change-in-custody petition, we lack jurisdiction because the father did not file a timely

appeal. Accordingly, we affirm the judgment on the protective orders and dismiss the appeal of the judgment on the change-in-custody petition.

1. *Proceedings below.*

The procedural posture of this case is unusual. The father and mother were divorced in August 2010 in the Superior Court of Paulding County, where the marital residence had been located. The mother was awarded sole custody of the couple's two minor daughters, J. P., then nine years old, and S. P., then five years old.

On September 28, the mother notified the father by email of her intent to move to Texas with the girls. The father responded in an email, "Don't count on it!"

On October 4, 2010, within days of learning of the mother's plans to move out of state and less than two months after the conclusion of the divorce proceedings, the father petitioned in Paulding Superior Court for a change in custody. Later that month he filed petitions for family violence protective orders on behalf of both girls. Because the mother had moved to Cobb County, the family violence petitions were filed in Cobb Superior Court.

The father obtained ex parte temporary protective orders on October 14, and custody of both girls was transferred to him on an emergency basis. A hearing was

set on the temporary protective orders in Cobb County on October 26, and a hearing was set on the father's change-in-custody petition in Paulding County on October 27.

At the October 26 proceeding, the Cobb Superior Court elected to defer to the Paulding Superior Court. With the parties' consent, the Cobb Superior Court issued the following order in both of the temporary protective order cases:

> The above styled action having come before the Court on the 26th day of October, 2010 and both parties having appeared and announced ready and the Court having determined that the parties are to appear before the Honorable Judge Beavers of Paulding County Superior Court on the 27th day of October, 2010, this Court defers to Paulding County Superior Court to hear and rule upon the issues in an economic use of time for both Courts.

> Both parties shall appear and present their evidence before the Honorable Judge Beavers on the 27th day of October, 2010.

The Paulding Superior Court held the hearing as scheduled on October 27, 2010. In an order filed that day in open court, he granted the mother's motion to dismiss the change-in-custody petition for lack of personal jurisdiction. He then received evidence pertaining to whether to grant temporary family violence protective orders against the mother. During the course of the hearing, however, the father's counsel became ill and the hearing was suspended before the father finished

3

presenting his evidence and before the mother presented her evidence. The hearing was not reconvened. Instead, the father submitted to the court a brief, with supporting affidavits, arguing that the court should grant 12-month family violence protective orders. (The mother reports that she also submitted a post-hearing brief, but the record on appeal does not contain that brief.)

On November 15, 2010, the Paulding Superior Court entered an order dismissing the ex parte temporary family violence protective orders (which had been entered in Cobb County), returning the girls to the mother's custody, and allowing the mother to leave the state with the girls. This ruling effectively denied the father's request for a 12-month protective order, although the trial court did not expressly rule on that issue in his order.

On December 14, 2010, the father filed an application for discretionary appeal from that November 15 order. We granted the application on the ground that the ruling on the protective orders was subject to direct appeal because it involved child custody.

On the father's motion, we remanded the case to Paulding Superior Court for completion of the record. When the case subsequently was redocketed, the record

4

included a representation from the Paulding Superior Court that the trial court record had been "sent in its entirety."

2. *The evidence authorized the trial court's ruling on the family violence protective orders and those ex parte orders have, in any event, long since expired as a matter of law.*

The father contends that the Paulding Superior Court erred in its ruling on the family violence protective orders. "The grant or denial of a motion for a protective order generally lies within the sound discretion of the trial court. We therefore will not reverse absent an abuse of discretion. The trial court is in the best position to make determinations on these issues, and we will not overrule its judgment if there is any reasonable evidence to support it." (Citations and punctuation omitted.) *Anderson v. Mergenhagen*, 283 Ga. App. 546, 548 (1) (642 SE2d 105) (2007). As explained below, the evidence in this case authorized the trial court to enter its order effectively denying the family violence protective orders.

The process for obtaining a family violence protective order is set forth in the Family Violence Act, OCGA §§ 19-13-1 et seq. A superior court "may, upon the filing of a verified petition, grant any protective order . . . to bring about a cessation

5

of acts of family violence." OCGA § 19-13-4 (a). The term "family violence" is pertinently defined as

> the occurrence of one more of the following acts between . . . parents and children . . . : (1) Any felony; or (2) Commission of offenses of battery, simple battery, simple assault, assault, stalking, criminal damage to property, unlawful restraint, or criminal trespass. The term "family violence" shall not be deemed to include reasonable discipline administered by a parent to a child in the form of corporal punishment, restraint, or detention.

OCGA § 19-13-1.

A petitioner may seek a family violence protective order for himself or herself or, as occurred here, on behalf of a minor child. OCGA § 19-13-3 (a). In the petition, the petitioner must "allege specifics facts that probable cause exists to establish that family violence has occurred in the past and may occur in the future." OCGA § 19-13-3 (b). Upon the filing of a petition, the court may order temporary ex parte relief. Id. Then, within 30 days after the filing of the petition, a hearing must be held at which the petitioner "must prove the allegations of the petition by a preponderance of the evidence." OCGA § 19-13-3 (c). "If a hearing is not held within 30 days, the petition shall stand dismissed unless the parties otherwise agree." Id.

6

In this case, a hearing occurred within 30 days but occurred in the Paulding Superior Court – rather than the Cobb Superior Court, which had venue over the petition. See OCGA § 19-13-2 (a) (superior court of county where respondent resides shall have jurisdiction over family violence protective order proceedings). Given that the parties agreed for the Paulding Superior Court to conduct the hearing, we will assume arguendo that venue was proper in the Paulding Superior Court pursuant to the Cobb Superior Court's October 26 order. We note that if the Paulding Superior Court lacked venue over the family violence order proceedings, then the father's petition would stand dismissed for failure to meet OCGA § 19-13-3 (c)'s requirement that a hearing be held within 30 days.

The record in this case does not contain the family violence petitions that the father filed in Cobb Superior Court. Thus, it does not show the specific allegations of family violence made in those petitions. At the hearing – which, as noted above, was suspended and not reconvened – the father attempted to demonstrate that the mother had yelled at and frightened the two girls, that she had hit S. P., causing bruises on the girl's legs, and that she had hit and chased J. P. The evidence was as follows.

The girls spent a weekend visit with the father beginning on Friday, September 24, 2010. The father testified that he noticed multiple bruises, some apparently older than others, on S. P.'s legs that evening. He testified that S. P. told him that "Mommie had done it" and that "Mommie hit me." The father did not take S. P. to a medical provider, but instead contacted the police and the Department of Family and Children Services. On Sunday, September 26, the father met with a Cobb County officer, told him "what was going on," and showed him S. P.'s bruises. The officer testified that S. P. first told him that she got the bruises when she fell from her bicycle. But after prompting from the father, S. P. said "my Mommie grabbed me." J. P. told the officer that the mother had hit her five times, that she had seen the mother grab and hit S. P. twice, and that she once had tried to intervene and the mother had told her to leave. The officer turned the case over to a crimes against children detective, but no criminal charges were brought. The father returned the girls to the mother at the end of the weekend.

Two days later, the mother notified the father of her intent to move to Texas with the girls. The father responded, "Don't count on it!"

The next day, the father picked up the girls for a short evening visit. S. P., he testified, began crying and said the mother was hitting and beating her again. He

testified that both girls said that they did not want to return to the mother and described the mother screaming, running around the apartment, and hitting them. The father called 911 and met with Paulding County law enforcement officers. A Paulding County officer testified that J. P. told him that she did not want to return to the mother because the mother "hits." S. P. would not speak to the officer. The father announced that he was not going to return the girls to the mother. The officer contacted the mother and told her that he could not make the father return the girls to her at that time.

The father also testified that J. P. had told him several times that the mother was hitting S. P., that the mother had threatened to hit J. P. if she "didn't mind her business," and that on one occasion J. P. had run and hid from the mother because the mother was loud and frightening. He said that the girls cried a lot during visits with him, looked panicked, and would tell him that they were afraid and did not want to return to the mother. The father took the girls to a child psychologist on October 16, 2010; the psychologist testified that he spoke with them for 19 minutes, during which they stated that the mother was mean, that she yelled at and spanked them, and that they did not want to move to Texas.

The father admitted at the hearing that in 1994 he accused a former wife (not the mother in this case) of abusing their daughter and that that case was dismissed. He also admitted that he previously accused the mother in this case of abusing the girls and that those allegations were determined to be unfounded.

The father argues that the trial court was required to grant a family violence protective order based on this evidence, because the mother did not present evidence to refute the testimony that the bruises occurred when she hit S. P. or to demonstrate that her actions were part of reasonable discipline.

We are not persuaded. In the first place, the father's argument ignores the fact that the mother was unable to present any evidence at the hearing due to the illness of the father's counsel. (The record suggests, however, that the mother would have been able to present some refuting evidence at the hearing had she been given the opportunity. )

More fundamentally, whether or not it was rebutted, the trial court was under no obligation to believe the father's evidence. As petitioner, he bore the burden of showing by a preponderance of the evidence that an act of family violence occurred. It was the father's burden to show that any actions by the mother were *not* part of reasonable discipline.

Most of the father's evidence consisted of reports of statements made by the girls, who did not testify. We note that the admissibility of that evidence is questionable. See *Allen v. Clerk*, 273 Ga. App. 896, 898 (1) (616 SE2d 213) (2005) (temporary protective order cannot rest on hearsay evidence). But we assume – without deciding – that the statements were competent evidence under the Child Hearsay Statute, OCGA § 24-3-16, or under some other exception to the hearsay rule.

The credibility of the evidence was for the trial court, as finder of fact. See *White v. State*, 287 Ga. 713, 716 (1) (b) (699 SE2d 291) (2010). Much of the evidence of what the girls said about the mother came from the testimony of the father, who had a history of making unfounded allegations of child abuse against former wives, including the mother in this case. Notably, the only person other than the father whose testimony expressly connected the bruises on S. P.'s legs to actions of the mother was one of the police officers, who testified that S. P. first told him that the bruises were caused by a fall from her bicycle and only blamed the mother after prompting from the father. The trial court could have accepted this testimony as evidence that the mother caused S. P.'s bruises, but he was not required to do so. See id.

In any event, the evidence presented by the father offered no context for the alleged incidences of the mother hitting, yelling, chasing and being "mean." The trial court could have found from the evidence that the father had not shown by a preponderance of the evidence that the incidences fell outside the bounds of permissible, reasonable discipline. See *Buchheit v. Stinson*, 260 Ga. App. 450, 455-456 (579 SE2d 853) (2003) (physical precedent only). See also *Maddox v. Boutwell*, 176 Ga. App. 492, 493-494 (336 SE2d 599) (1985) (finding, as a matter of law, that school-administered corporal punishment of striking student four times with wooden paddle, which had been painful to student and had resulted in "severe bruises" to his buttocks and thigh, was neither excessive nor unduly severe; "it is to be anticipated that corporal punishment will produce pain and the potential for bruising"). Under these circumstances, we discern no abuse of discretion in the trial court's denial of the petition for family violence protective orders. See *Anderson*, 283 Ga. App. at 548 (1).

3. *The trial court did not err in excluding photographic evidence.*

The father argues that the trial court erred in refusing to admit into evidence photographs showing S. P.'s bruises. We find no error. The trial court held that the father had not yet met the "foundational requirement" for the photographs' admission,

12

a determination that fell within that court's discretion. See *Whitaker v. State*, 287 Ga. App. 465, 467 (2) (652 SE2d 568) (2007). And although the record shows that the court suggested it would reconsider the photographs' admission, the father's counsel made no further attempt to lay a foundation for them. The decision in *Dick v. State*, 246 Ga. 697, 704 (13) (273 SE2d 124) (1980), cited by the father, is inapposite; it concerned the failure of an appellant to perfect for appellate review an objection to a document that the trial court admitted into evidence.

4. *This Court lacks jurisdiction over the father's untimely appeal from the dismissal of his change-in-custody petition.*

The father challenges the court's dismissal of his petition for change in custody. As detailed below, we lack jurisdiction to review this decision because it was a final judgment issued in a separate case from that involving the family violence petitions and the father failed to file his application for discretionary review of the judgment within the time period required to confer appellate jurisdiction.

"This court has a duty to inquire into its jurisdiction to entertain the appeal and review the alleged errors of the trial court. Where is it apparent that jurisdiction to decide the case does not exist, the appeal must be dismissed." (Citations omitted.)

13

*Forest City Gun Club v. Chatham County*, 280 Ga. App. 219, 220 (633 SE2d 623) (2006).

We first consider whether, under OCGA § 5-6-34 (d), the father's timely appeal from the family violence orders confers upon us jurisdiction over his appeal from the dismissal of the change-in-custody petition. OCGA § 5-6-34 (d) provides that, where a direct appeal is taken from a decision or judgment under OCGA § 5-6-34 (a), "all judgments, rulings, or orders rendered *in the case* which are raised on appeal and which may affect the proceedings below shall be reviewed and determined by the appellate court." (Emphasis added.) Accordingly, the question before us is whether the order dismissing the change-in-custody petition was rendered in the same case as the family violence orders. See *In the Interest of I. S.*, 278 Ga. 859, 860-861 (604 SE2d 546) (2005) (rule set forth in OCGA § 5-6-34 (d) does not apply where the earlier judgment, ruling or order was in a separate and distinct proceeding).

We conclude that these orders were not rendered in the same case but rather were rendered in separate and distinct proceedings, for several reasons. The proceedings involved different parties – the petitioner in the change-in-custody proceeding was the father, while the petitioners in the family violence proceedings were the girls (through their father). The petitions in the proceedings sought different

14

forms of relief – the change-in-custody petition sought an order giving the father permanent custody of the girls under OCGA § 19-9-3, while the family violence petitions sought orders protecting the girls from their mother under OCGA § 19-13-3. The proceedings were filed in two different courts – the change-in-custody proceeding was filed in Paulding Superior Court, while the family violence proceedings were filed in Cobb Superior Court. Although the parties agreed for the Cobb Superior Court to "defer" its ruling on the family violence proceedings to the Paulding Superior Court, nothing in the record reflects that the family violence proceedings were ever formally transferred to the Paulding Superior Court or consolidated with the change-in-custody proceeding. To the contrary, the Paulding Superior Court record transmitted to us on appeal apparently does not contain parts of the record in the family violence proceedings, including the petitions that initiated those proceedings. (The impact of these irregularities, if any, upon the validity of the family violence orders has not been raised by the father and is not an issue in this appeal.)

It is true that the Paulding Superior Court issued its ruling in the family violence proceedings under the case number assigned to the change-in-custody proceeding. But given that the proceedings involved different parties and different

15

issues and were not consolidated, we find that this administrative decision does not change the separate and distinct nature of the proceedings. See generally *In the Interest of D. N. M.*, 193 Ga. App. 812, 812-813 (1) (389 SE2d 336) (1989) (the case number used in the proceeding was not dispositive in determining whether the proceeding was a distinct case from a related proceeding).

Like the appellant in *In the Interest of C. M. L.*, 260 Ga. App. 502 (580 SE2d 276) (2003), the father seeks in a single appeal review of orders entered in two separate proceedings. Because the rulings were rendered in different cases, his timely appeal from the order in the family violence proceedings does not confer jurisdiction upon the order dismissing the change-in-custody petition under OCGA § 5-6-34 (d).

Therefore, we must consider whether the father's appeal from the dismissal of the change-in-custody order itself was timely. See generally *In the Interest of C. M. L.*, 260 at 503 (1) (finding appellate court had jurisdiction over one ruling but lacked jurisdiction over another ruling, where appellate review of rulings in two separate cases was brought in a single appeal). The Paulding Superior Court signed that dismissal order and entered the judgment by filing it with the clerk in open court on October 27, 2010, thereby triggering OCGA § 5-6-38 (a)'s 30-day period for filing a notice of appeal. See OCGA § 5-6-34 (a) (11) ("judgments or orders in child

16

custody cases including . . . refusing to change child custody" are judgments subject to direct appeal); *GMC Group v. Harsco Corp.*, 293 Ga. App. 707 (667 SE2d 916) (2008) (the filing with the clerk of a judgment, signed by the judge, constitutes the entry of a judgment within the meaning of the Appellate Practice Act). The father, however, did not file a notice of appeal within 30 days after the judgment's entry. Instead, he filed an application for discretionary appeal 55 days after the judgment's entry, on December 14, 2010.

The father argues that "it is unclear whether [his] Counsel timely received a copy of [the dismissal] Order." But notice to counsel of an order is not a prerequisite of the running of the 30-day time period for filing a notice of appeal; rather, lack of notice to counsel is a ground for a motion to set aside the order. See *Pierce v. State*, 289 Ga. 893, 894-895 (2) (717 SE2d 202) (2011) ("when notice of an appealable order is not given, the losing party should file a motion to set aside, and the trial court should grant the motion and re-enter the judgment, whereupon the 30-day appeal would begin to run again") (citation and punctuation omitted). There is no indication that the father sought to set aside the change-in-custody order.

"[T]he proper and timely filing of a notice of appeal is an absolute requirement to confer jurisdiction upon an appellate court." (Citation and punctuation omitted.)

17

*Register v. Elliott*, 285 Ga. App. 741, 743 (647 SE2d 406) (2007). Because the father did not satisfy this requirement, we dismiss his untimely appeal from the order dismissing the change-in-custody petition. See OCGA § 5-6-48 (b) (1); *Hill v. Buttram*, 255 Ga. App. 123, 124 (564 SE2d 530) (2002); see also *In the Interest of C. M. L.*, 260 Ga. App. at 503 (1).

*Judgment affirmed in part; dismissed in part. Barnes, P. J., and Adams, J., concur*.