**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**September 10, 2018**

# In the Court of Appeals of Georgia

A18A0973. BLAND v. BLAND.

McMILLIAN, Judge.

In August 2017, Ellen Bland filed a family violence petition, seeking a temporary protective order against her estranged husband, Patrick Bland.[1] Following a hearing on the petition, the trial court entered a family violence twelve month protective order (the "Protective Order"). On appeal, Patrick challenges the sufficiency of the evidence and asserts that the trial court erred in entering the Protective Order without affording him due process.[2] For the reasons that follow, we reverse.

"The grant or denial of a motion for protective order generally lies within the sound discretion of the trial court. Accordingly, we will not reverse absent an abuse

---

[1] For clarity, we will refer to the parties by their first names.

[2] Ellen has not filed an appellate brief in this case.

of that discretion." (Citation and punctuation omitted.) *Quinby v. Rausch*, 300 Ga. App. 424, 424 (685 SE2d 395) (2009). "An abuse of discretion occurs where a ruling is unsupported by any evidence of record or where that ruling misstates or misapplies the relevant law." (Citation and punctuation omitted.) *Lewis v. Lewis*, 316 Ga. App. 67, 68 (728 SE2d 741) (2012).

The limited record in this case shows that the parties were living apart and beginning the legal process of getting a divorce. In her verified petition for a temporary protective order, Ellen alleged that on August 17, 2017, Patrick returned to their marital home, where she still lived with their seven-year-old daughter, to retrieve some of his personal belongings, including several firearms. He then returned with an AR-15 and allegedly attempted to force his way into the home. According to Ellen, Patrick's father physically prevented him from entering the house while she locked the doors. The petition also stated that she overheard Patrick tell his father that "if he did not get out of his way he would shoot him too because he was going to 'take care of all of this.'" Based on this petition, the trial court entered a Family Violence Ex Parte Protective Order and set a show cause hearing for September 1, 2017 pursuant to OCGA § 19-13-3 (c) on whether a twelve month protective order should be entered.

At the hearing, Patrick asked the trial court to vacate the temporary protective order as it was premised on patently false information. He then submitted, without objection, a report prepared by the responding officer regarding the event in question. According to the report, Ellen informed the officer that she and Patrick had gotten into verbal arguments both times that Patrick had come to her home to retrieve his belongings. When he returned a third time, he walked toward the house while holding a long, black gun. Ellen then closed the garage door, locked the house, and called the police. She told the officer that Patrick never made any threats toward her or pointed the gun in her direction or attempted to gain entry into the home. The report further indicated that the officer spoke with Patrick's father, who confirmed Patrick had been holding an "AR" but never pointed the gun at anyone or made any threats. When he told his son to go home and come back to get his things another day, Patrick got into his vehicle and left.

The trial court also heard brief testimony from the parties and Patrick's parents, who arrived at the house shortly before Patrick showed up with the AR-15. Patrick's mother testified that she never told Ellen that she was in danger or that she was afraid for her safety or her grandchild's safety. Rather, she went over there to ask whether

she and Patrick were arguing because he had seemed upset when he called her that day. His mother explained that she has done this before when Patrick and Ellen had "discussions" to make sure her granddaughter was "out of the picture[.]" She was still there when Patrick came over and did not witness him point the weapon at anyone or threaten to hurt anyone because she was inside the house. Patrick's father admitted that he stepped in front of his son in the driveway, but denied that Patrick was yelling, threatening anyone, or attempting to force his way into the home. When he told Patrick to go home, he did so.

When the trial court questioned Patrick as to why he had returned to the house where his daughter lived with a firearm, Patrick explained that he had already removed a few guns from the home, including the AR-15. He took two rifles to his parents' house to store them and had taken the AR-15 with him to his new apartment but had no safe way to store it, so he was bringing it back, unloaded, to his old home where there were gun safes.

Ellen testified briefly that Patrick's parents alerted her about concerns for her personal safety when they arrived at her house about 10 minutes before Patrick, that the AR-15 had previously been removed from the home, and that Patrick had it in his hands when he arrived that night. Ellen did not testify that Patrick pointed the gun at

4

her, that he threatened her or his parents, or that he tried to force his way into the home as alleged in the petition.

The trial court judge stated that he did not believe Patrick's testimony and at the conclusion of the hearing announced that he would grant Ellen's petition because it did not make sense that Patrick would have already removed several guns but then had to return the AR-15 to the house where his wife and daughter were living. We granted Patrick's discretionary application, and this appeal followed.

1. Patrick first asserts that there was insufficient evidence for the trial court to enter the Protective Order because there is no evidence in the record that he pointed the gun at Ellen or threatened her with physical harm, and thus, no evidence that he committed an act of family violence. We turn first to the Family Violence Act, which is codified at OCGA § 19-13-1 et seq. OCGA § 19-13-3 (b) provides in relevant part:

> Upon the filing of a verified petition in which the petitioner alleges with specific facts that probable cause exists to establish that family violence has occurred in the past and may occur in the future, the court may order such temporary relief ex parte as it deems necessary to protect the petitioner or a minor of the household from violence.

Family violence is statutorily defined as any felony or the commission of battery, simply battery, simple assault, assault, stalking, criminal damage to property,

unlawful restrain, or criminal trespass. OCGA § 19-13-1. The Family Violence Act

further provides that, within 30 days of the filing of the petition,

> a hearing shall be held at which the *petitioner must prove the allegations of the petition by a preponderance of the evidence* as in other civil cases. . . . If a hearing is not held within 30 days, the petition shall stand dismissed unless the parties otherwise agree.

OCGA § 19-13-3 (c) (emphasis added).

Here, Ellen did allege at least one act of family violence in her petition: that

Patrick had returned with an AR-15 and attempted to force his way into the home and

threatened to shoot his father "too" if he did not let him get by.[3] These actions, if

proven true by a preponderance of the evidence, could constitute aggravated or

simple assault.[4] See *Daniels v. State*, 298 Ga. App. 736, 737 (681 SE2d 642) (2009)

(offense of simple assault "is complete if there is a demonstration of violence,

---

[3] Ellen also alleged that at some point in the past, Patrick had threatened her with guns and held a gun to her head in the presence of their daughter. However, the trial judge stated at the hearing that he did not consider that allegation in issuing the order.

[4] A person commits the offense of simple assault when he "[a]ttempts to commit a violent injury to the person of another[] or . . . [c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury." OCGA § 16-5-20 (a) (1) and (2). When a person commits an assault with a deadly weapon, the offense constitutes aggravated assault. OCGA § 16-5-21 (a) (2).

6

coupled with an apparent present ability to inflict injury so as to cause the person against whom it is directed reasonably to fear that he will receive an immediate violent injury unless he retreats to secure his safety"). However, there was no evidence presented at the hearing to establish this or any other act of family violence. The entirety of the testimony offered by Ellen is that Patrick's parents arrived in her driveway shortly before Patrick returned with an AR-15 that he had previously removed from the home. And the only other evidence presented that day – a copy of the responding officer's report and the testimony of Patrick and his parents – is in direct contradiction to the allegations in Ellen's petition.

We acknowledge that "it is not this Court's function to second-guess the trial court in cases such as this, which turn largely on questions of credibility and judgments. The trial court is in the best position to make determinations on these issues, and we will not overrule its judgment if there is any reasonable evidence to support it." (Citation omitted.) *Quinby*, 300 Ga. App. at 425. In addition, the trial court is not required to believe any testimony offered, whether or not it is rebutted. See *Perlman v. Perlman*, 318 Ga. App. 731, 736 (2) (734 SE2d 560) (2012). However, where, as here, the trial court's ruling is unsupported by *any* evidence in the record, it is an abuse of discretion and we must reverse. See *Martin v. Woodyard*,

7

313 Ga. App. 797, 798-99 (723 SE2d 293) (2012) (where petitioner did not meet the evidentiary burden to establish stalking, the trial court abused its discretion in issuing a protective order); *Buchheit v. Stinson*, 260 Ga. App. 450, 455 (2) (579 SE2d 853) (2003) (trial court abused discretion in granting protective order where there was insufficient evidence presented that defendant had committed an act of family violence) (physical precedent only).

2. Based on our holding in Division 1, we need not address Patrick's remaining enumeration of error.

*Judgment reversed. Reese, J., concurs. Barnes, P.J. concurs fully and specially*.

# In the Court of Appeals of Georgia

A18A0973. BLAND v. BLAND.

BARNES, Presiding Judge, concurring fully and specially.

I concur fully with the majority opinion. I write separately to emphasize the unique factual posture of this case and also to stress that the reversal of the trial court's order does not minimize the seriousness of the allegations of family violence present in this case. OCGA § 19-13-3 (c) requires that the wife "*prove* the allegations of the petition," and in this case, the trial court elicited no testimony from the wife that, even under a preponderance of the evidence standard, established that the husband had committed an act of family violence.