**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**March 9, 2022**

# In the Court of Appeals of Georgia

A21A1776. DUNN v. DUNN.
A21A1777. DUNN v. DUNN.
A21A1778. DUNN v. DUNN.

BARNES, Presiding Judge.

After their divorce, Caryn Dunn (the wife) procured against Danny Dunn (the husband) a protective order and two contempt orders. In these appeals, the husband contests those orders. Because the protective order lacked sufficient evidence and the contempt orders were precluded by the husband's pending motion for new trial, we reverse the judgments.

The underlying divorce complaint was filed in 2019. After a hearing on October 28, 2020, the trial court entered on December 15, 2020 a Final Order of Divorce ("Final Order"). Relevant here, the Final Order granted the wife physical custody of the parties' four minor children; granted the husband visitation; specified

child support to be paid by the husband; awarded the marital residence to the wife; and provided for the sale of other real property.

Within 30 days of the entry of the Final Order, the husband filed on January 8, 2021 a motion for new trial. Among other things, he contended that the trial court's determinations and awards were contrary to law and against the weight of the evidence; that the trial court failed to provide necessary parameters of child custody/visitation;[1] and that the trial court failed to rule on his claim of premarital interest in various real estate.

Meanwhile, as a separate action, the wife petitioned the court on January 7, 2021 for a family violence protective order against the husband, asserting claims of "abuse." Two weeks later, the wife filed on January 21, 2021 a motion to hold the husband in contempt, alleging that he had violated the Final Order by falling in arrears of his child support obligations and by withholding the children from her during the Thanksgiving and Christmas time periods. The wife's petition for a

[1] For instance, the husband asserted that the Final Order failed to provide starting dates and times for his parenting time; failed to address specific times for holiday parenting time; failed to address holiday exchange times; failed to address parenting time for the children's birthdays; and failed to address beginning and ending dates for the husband's summer parenting time. The husband cited OCGA § 19-9-1 (b) (listing requirements of a parenting plan).

2

protective order and her contempt motion were heard at an evidentiary hearing conducted on February 4, 2021. The next day, the trial court entered two of the three orders contested here: (i) one, granting the wife a 12-month family violence protective order; and (ii) the other, granting the wife's motion to hold the husband in contempt for failure to pay child support and for retaining the parties' children contrary to terms of the Final Order.

Two months later, and while the husband's motion for new trial was still pending, the wife filed another motion to hold the husband in contempt; among her allegations, she claimed that in violation of the Final Order, the husband had failed to pay child support and had transferred certain real property. After an evidentiary hearing on April 8, 2021, the trial court entered on that same day the third order contested here, which order held the husband in contempt in connection with his failure to pay child support and his sale (or transfer) of certain real estate.

With respect to each of the three orders, the husband filed an application for discretionary review. Docketed here as A21D0284, A21D0285, and A21D0331, this Court granted each application, giving rise to Case Nos. A21A1776, A21A1777, and A21A1778, respectively. We turn first to the husband's challenges to the contempt orders.

3

1. Regarding the first contempt order, the husband advances the following arguments.

(a) The husband contends that, pursuant to OCGA § 9-11-62, his motion for new trial acted as an automatic supersedeas that precluded the trial court from holding him in contempt for violating the child support and the custody/visitation provisions of the Final Order. We agree.

OCGA § 9-11-62 (b) provides, "The filing of a motion for a new trial or motion for judgment notwithstanding the verdict shall act as supersedeas unless otherwise ordered by the court; but the court may condition supersedeas upon the giving of bond with good security in such amounts as the court may order." In this case, the husband filed a timely motion for new trial after the Final Order was entered. And nothing in the Final Order exempted any of its provisions from the automatic supersedeas provided by OCGA § 9-11-62 (b); nor did the Final Order place any condition on the supersedeas.[2] Hence, at the time of the contempt ruling, the relevant

---

[2] See generally *Frazier v. Frazier*, 280 Ga. 687, 691 (5) (631 SE2d 666) (2006) (holding that a trial court is authorized to "deny or limit the effect of an automatic supersedeas" upon provisions of a divorce decree); *Blackmore v. Blackmore*, 311 Ga. App. 885, 888 (1) (717 SE2d 504) (2011) (ascertaining "the trial court's broad authority to decide matters of the supersedeas effect of child custody rulings, as well

provisions of the Final Order were stayed pending resolution of the husband's motion for new trial. See *Hunnicutt v. Hunnicutt*, 248 Ga. 516, 519 (3) (283 SE2d 891) (1981) (explaining that where the divorce judgment was superseded by the pending motion for new trial, the former spouse could not be held in contempt for violating that judgment);[3] *McLaws v. Drew*, 355 Ga. App. 162, 170 (1) (843 SE2d 440) (2020) ("[M]otion for a new trial operated as a supersedeas, barring the enforcement of the contempt order."); *Payne v. Myatt*, 351 Ga. App. 678, 679-680 (2) (832 SE2d 663) (2019) (explaining that the father's pending motion for new trial stayed enforcement of order to pay mother's attorney fees and thus precluded trial court's contempt ruling, where the order did not provide any exemptions from or conditions on the automatic supersedeas). Cf. *Franklin v. Franklin*, 294 Ga. 204, 208 (3) (751 SE2d 411) (2013) (rejecting wife's argument that, under OCGA § 9-11-62 (b), her filing of a motion for new trial acted as an automatic supersedeas that prevented the trial court from enforcing its judgment with respect to her child support obligation, because by "specifying that a new temporary order would take effect in the event of an appeal,

---

as the trial court's mandate to protect the best interest and welfare of the children pending appeal").

[3] *Hunnicutt* applied Code Ann. § 81A-162 (b), the predecessor of OCGA § 9-11-62 (b), which bore identical language.

5

the trial court properly ensured that [w]ife's obligation to pay child support would remain in force and effect even if [w]ife challenged the [f]inal [d]ecree").

We conclude that "[t]he trial court's contempt ruling, therefore, was error and must be reversed." *Payne*, 351 Ga. App. at 680 (2); see *Hunnicutt*, 248 Ga. at 519 (3). And no merit lies in the wife's claim that the husband's failure to assert the automatic supersedeas at the trial court level waived the issue. The record shows that the trial court acknowledged at the hearing that the husband's motion for new trial remained pending. And as recited above, OCGA § 9-11-62 (b) provides that "[t]he *filing* of a motion for a new trial . . . *shall* act as supersedeas unless otherwise ordered by the court." (Emphasis supplied.) "Under the circumstances of this case wherein the trial court's order was superseded [upon the filing of the husband's motion for new trial], [the husband] was not, *as a matter of law*, in contempt" of the Final Order, which was automatically stayed. (Emphasis supplied.) *Hunnicutt*, 248 Ga. at 519 (3).[4] It follows that the trial court had no authority to hold the husband in contempt of the stayed order. See *Imperial Body Works v. Natl. Claims Svc.*, 158 Ga. App. 241, 243 (2) (279 SE2d 534) (1981) ("[D]efendant was insulated from execution on the instant

---

[4] See *Hunnicutt v. Hunnicutt*, 248 Ga. 733, 733 (286 SE2d 29) (1982) (explaining that, in its earlier decision at *Hunnicutt*, 248 Ga. 516, "the granting of contempt was reversed as a matter of law").

6

judgment by the automatic supersedeas flowing from defendant's filing of its . . . motion for new trial[.]"); see also *Adair v. Adair*, 236 Ga. 443, 444 (1) (224 SE2d 21) (1976) (recounting that the mother moved for a new trial after the father was awarded custody of their child; noting that "the motion for new trial . . . is still pending"; and holding that "until it is acted upon[,] the [custody order in favor of the father] *is superseded*") (emphasis supplied); *Exum v. Long*, 157 Ga. App. 592, 593 (1) (278 SE2d 13) (1981) ("[T]he filing of plaintiff's motion for new trial acted as a supersedeas in the absence of a contrary order by the trial court."). See generally *Tolbert v. Toole*, 296 Ga. 357, 361 (2) (767 SE2d 24) (2014) (concluding that the "jurisdictional defect due to supersedeas cannot be waived," and holding further that "[a]ny proceeding so conducted in the trial court 'is coram non judice,' and the resulting want of jurisdiction cannot be waived . . . so as to give effect to the void judgment"). Cf. *Horn v. Shepherd*, 292 Ga. 14, 17 (3) (732 SE2d 427) (2012) (concluding that the trial court was not precluded from ruling on contempt motion, where counsel for party held in contempt stated at the contempt hearing that there was

7

no pending motion for new trial against the order, *and* where "the record is devoid of any evidence of a valid, pending motion for new trial").[5]

(b) The husband alternatively claims that the trial court erred in its calculation of child support arreages at $4,320. But our holding in Division 1 (a) renders this claim of error moot.

*Case No. A21A1778, Contempt Order Entered April 8, 2021*

---

[5] The wife also counters with the conclusory statement that "[t]he trial court continues to have jurisdiction over the child related issues," followed by a quotation of the identical OCGA §§ 5-6-34 (e) and 5-6-35 (k): "Where an appeal is taken pursuant to this Code section for a judgment or order granting nonmonetary relief in a child custody case, such judgment or order shall stand until reversed or modified by the reviewing court unless the trial court states otherwise in its judgment or order."

However, the wife has not established – by proffer of principles of statutory construction, case law, or any other legal analysis – that she prevails under either statute. See *Phillips v. Phillips*, 347 Ga. App. 524, 533 (6) (a), n.14 (820 SE2d 158) (2018) (noting that "legal analysis is, at a minimum, a discussion of the appropriate law as applied to the relevant facts") (citation and punctuation omitted); see also *Cousin v. Tubbs*, 353 Ga. App. 873, 876 (1), n.10 (840 SE2d 85) (2020) (noting that "[m]ere conclusory statements are not the type of meaningful argument contemplated by our rules") (citation and punctuation omitted). For example, the wife has made no showing that the statutory precondition was satisfied here – that, at the time of the contempt ruling, an *appeal* pursuant to either Code section had been taken (from the underlying Final Order that was alleged to have been violated). Cf. *Murphy v. Murphy*, 330 Ga. App. 169, 174 (5) (767 SE2d 789) (2014) (concluding that where an appeal of a child custody order had been taken, such order, pursuant to OCGA § 5-6-34 (e), "stood and remained enforceable through contempt proceedings notwithstanding the pending appeal").

8

2. Among his several arguments challenging the second contempt order, the husband contends that "the trial court was without authority to enter an order of contempt, as [his] Motion for New Trial acts as supersedeas to enforcement of the final order." For reasons explained above, the trial court's contempt order was error and is thus reversed. See Division 1 (a), supra.

3. Given our holding in Division 2, supra, we do not reach the husband's remaining challenges to the second contempt order.

*Case No. A21A1776, Family Violence Protective Order Entered February 5, 2021*

4. The husband contests the family violence protective order,[6] claiming that the record is devoid of any evidence to find that he committed any alleged act of family violence.[7]

Pursuant to OCGA 19-13-1,

[T]he term "family violence" means the occurrence of one or more of the following acts between past or present spouses, persons who are parents of the same child, parents and children, stepparents and stepchildren,

---

[6] Although the 12-month protective order has apparently expired, the issues presented are not moot. See generally *Smith v. Smith*, 350 Ga. App. 647, 649, n. 5 (829 SE2d 886) (2019); *Pate v. Sadlock*, 345 Ga. App. 591, 594 (1) (a) (814 SE2d 760) (2018) (addressing claims of error on rulings that "could be repeated by the trial court yet evade review because of the timing of the appeal process"); *Elgin v. Swann*, 315 Ga. App. 809, 810 (1) (728 SE2d 328) (2012) (explaining that, although protective order had expired before appeal was resolved, the appellate issuers were not moot because they were "capable of repetition," yet "likely to evade review") (citations and punctuation omitted); *White v. Raines*, 331 Ga. App. 853, 854, n. 1 (771 SE2d 507) (2015) (determining that the appeal was not moot even though the contested protective order had expired, because the appeal presented an issue that could arise in other cases, yet evade review due to the short duration of such protective orders and the time constraints of appellate courts) (physical precedent only).

[7] See generally *Bland v. Bland*, 347 Ga. App. 273, 274 (819 SE2d 78) (2018) ("The grant or denial of a motion for protective order generally lies within the sound discretion of the trial court. Accordingly, we will not reverse absent an abuse of that discretion. An abuse of discretion occurs where a ruling is unsupported by any evidence of record or where that ruling misstates or misapplies the relevant law.") (citations and punctuation omitted).

10

foster parents and foster children, or other persons living or formerly living in the same household:

(1) Any felony; or

(2) Commission of offenses of battery, simple battery, simple assault, assault, stalking, criminal damage to property, unlawful restraint, or criminal trespass.

The term "family violence" shall not be deemed to include reasonable discipline administered by a parent to a child in the form of corporal punishment, restraint, or detention.

(a) Seeking affirmance of the protective order,[8] the wife claims that evidence at the February 4 hearing showed that the "[h]usband has left bruises on the parties'

---

[8] See Court of Appeals Rule 25 (b) (1) ("Part One [of the appellee's brief] shall point out any material inaccuracy or incompleteness of appellant's statement of facts and any additional statement of facts deemed necessary, plus citations to additional parts of the record or transcript deemed material. Failure to do so shall constitute consent to a decision based on the appellant's statement of facts. Except as controverted, appellant's statement of facts may be accepted by this Court as true."), (c) (2) (ii) ("[Appellant's] contention that certain matters are not supported by the record may be answered by reference to particular volume and pages where the matters appear.").

children which constitutes assault and battery."[9] In support of her claim, the wife cites her testimony on direct examination that:

Q: . . . [D]id you ever whip the children where you left marks?
A: No, I have never left bruises on my children.
Q: Was that a concern with you for your husband doing that?
A: Yes.

That vague testimony, however, provided no factual basis for the wife's "concern," and thus did not authorize a finding that the husband committed either assault or battery. See generally *Perlman v. Perlman*, 318 Ga. App. 731, 736 (2) (734 SE2d 560) (2012) (affirming denial of the parent's petition for a protective order, where "the evidence presented by the [petitioning parent] offered no context for the alleged incidences of the [other parent's] hitting, yelling, chasing and being 'mean'").

---

[9] See OCGA § 16-5-20 (a) ("A person commits the offense of simple assault when he or she either: (1) Attempts to commit a violent injury to the person of another; or (2) Commits an act which places another in reasonable apprehension of immediately receiving a violent injury."); 16-5-23.1 (a) ("A person commits the offense of battery when he or she intentionally causes substantial physical harm or visible bodily harm to another."), (b) ("As used in this Code section, the term 'visible bodily harm' means bodily harm capable of being perceived by a person other than the victim and may include, but is not limited to, substantially blackened eyes, substantially swollen lips or other facial or body parts, or substantial bruises to body parts.").

12

(b) The wife counters that the family violence protective order should be affirmed because the husband committed felony interference with custody under OCGA § 16-5-45. She cites that, at the evidentiary hearing, she testified that the husband had twice wrongfully withheld from her three of their children: (i) during the entire week of Thanksgiving 2020; then (ii) for a two-week period, starting the following December 11 (when the children were released from school a week early due to the COVID-19 pandemic).

(i) *Retaining child(ren) within the State of Georgia*. OCGA § 16-5-45 (b) (1) (C) pertinently provides, "A person commits the offense of interference with custody when without lawful authority to do so, the person . . . [i]ntentionally and willfully retains possession within this state of the child . . . upon the expiration of a lawful period of visitation with the child[.]" But only the "third or subsequent offense" constitutes a felony. OCGA § 16-5-45 (b) (2) (C). Pretermitting whether the wife could rely on any alleged misconduct that occurred before entry of the Final Order, the wife neither asserts, nor cites any evidence of a third or subsequent offense. Consequently, the wife's claim of felony interference with child custody under that subsection is unavailing.

(ii) *Retaining child(ren) outside the State of Georgia.* OCGA § 16-5-45 (c) (2) provides that a person who commits the offense of "interstate interference with custody" may be found guilty of a felony, where the person

> removes a minor . . . from this state in the lawful exercise of a visitation right and, upon the expiration of the period of lawful visitation, intentionally retains possession of the minor . . . in another state for the purpose of keeping the minor . . . away from the individual having lawful custody of the minor[.]

The wife cites her testimony at the February hearing that, at the time she filed the petition for a protective order (which was in January 2021), the husband was residing in Alabama. Regarding the relevant two intervals during November 2020 and December 2020, however, the wife cites nothing showing the whereabouts of the husband or where he took or retained their children. Consequently, the wife's assertion that she demonstrated that the husband committed felony interference with custody under OCGA § 16-5-45 (c) is also unavailing.

(c) Finally, the wife states, "It could also be argued that the actions of [the husband] constitute the felony of kidnapping." Lacking any accompanying legal

analysis, citation to the record, or discussion of pertinent facts,[10] this statement is unavailing. See *Cousin*, 353 Ga. App. at 876 (1), n.10; *Phillips*, 347 Ga. App. at 533 (6) (a), n. 14; see also footnote 8, supra.

For the foregoing reasons, the protective order entered against the husband is reversed for lack of sufficient evidence.

*Judgments reversed. Gobeil and Markle, JJ., concur*.

---

[10] At any rate, OCGA § 16-5-40 provides, "A person commits the offense of kidnapping when such person *abducts or steals away* another person without lawful authority or warrant and holds such other person against his or her will." (Emphasis supplied.) The wife makes no assertion and cites no evidence that the husband abducted or stole away any of the children.