**SECOND DIVISION**
**MERCIER, C. J.,**
**MILLER, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**January 8, 2024**

# In the Court of Appeals of Georgia

A23A1540. GIBSON-WRIGHT v. SMITH.

MILLER, Presiding Judge.

In this unfortunate dispute between an Alapaha city council member and a volunteer for the city of Alapaha, LuAngela Carla Gibson-Wright appeals from the trial court's order granting Rudolph Smith a 12-month protective order and denying her claim for attorney fees. On appeal, Gibson-Wright argues that (1) the evidence was insufficient to show that she committed stalking under OCGA § 16-5-90; and (2) the trial court erred by denying her claim for attorney fees under OCGA §§ 9-15-14 and 13-6-11. For the reasons that follow, we reverse the trial court's order granting Smith a protective order, vacate the trial court's denial of Gibson-Wright's claim for attorney fees, and remand the case for further proceedings.

"We review the grant of a petition for a protective order for abuse of discretion. In reviewing the sufficiency of the evidence, we construe the evidence in favor of the findings of the trier of fact." (Citations and punctuation omitted.) *Bodi v. Ryan*, 358 Ga. App. 267 (855 SE2d 11) (2021).

So viewed, the record shows that Smith has worked or volunteered for the city of Alapaha for approximately 18 years. Benjamin Davis, the mayor of Alapaha, asked Smith to assist him with the city's affairs, and Vickie Harsey, a member of the city council, asked Smith to assist with the city's budget and to serve as the project manager for the "Depot construction" project. Gibson-Wright was elected to Alapaha's city council in August 2019 and began serving her term in January 2020. After Gibson-Wright began serving her term, she discovered issues with the council's affairs. Specifically, she discovered that the city council was not conducting its affairs according to her interpretation of the charter, decisions regarding the city were being made by individuals who were not on the council, and minutes from the council's meetings were missing.[1] Tension arose between Gibson-Wright and Smith, and they

---

[1] Gibson-Wright contacted the Attorney General's Office regarding her concerns, and the Attorney General's Office apparently contacted the city attorney for Alapaha.

2

began to have difficulties working together after she was removed from one of the council's projects.

According to Smith, every time he goes to city hall Gibson-Wright is "up there," and she "stalked" him on five occasions.[2] The first incident was when Gibson-Wright made an open records request for information as to whether Smith was the city manager or the mayor's advisor.[3] The second incident involved Gibson-Wright and Larry Tabor, the chief of police for the city of Alapaha. During that incident, Gibson-Wright knocked on Tabor's office door, asked Tabor whether Smith was in his office, and left after learning that he was present. The third incident was when Smith left city hall to go home for lunch, and Gibson-Wright asked the city hall clerk whether he was inside his office. After the clerk told Gibson-Wright that Smith was not there, she asked the clerk why Smith's vehicle was in the parking lot. The fourth incident occurred on December 12, 2022. According to Smith, Gibson-Wright asked the city hall clerk whether Smith was a city employee while filming her interaction

---

[2] Smith offered no evidence as to when three of the incidents occurred.

[3] Although there was some testimony at the hearing that Gibson-Wright made an open records request for water bills for property that belonged to Smith's mother, Gibson-Wright was apparently unaware that the property belonged to Smith's mother, and Smith did not assert this incident as one of the instances of the alleged stalking.

with the clerk.[4] Smith then walked up to the clerk's window and confronted Gibson-Wright. After Smith returned to his office, he saw Gibson-Wright filming his car and circling it "like a bird," and he again confronted her. Gibson-Wright subsequently posted the footage of that interaction on YouTube.

The last incident occurred at the ribbon cutting ceremony for the Depot project on December 10, 2022, which Gibson-Wright attended with her significant other, Tremaine Atkins.[5] According to Smith, Gibson-Wright approached a group of city employees that he was standing with to take pictures, and he turned her away because the pictures were only for a select group of individuals. Atkins then confronted Smith, and Gibson-Wright retrieved her camera and presumably began filming the interaction. Smith said that Gibson-Wright did not "harass," threaten, or cause him any other problems and that she did not have any further contact with him at the ceremony after he turned her away from the group pictures. Smith, however, testified that he fears Gibson-Wright.

[4] The video of this incident was played during the hearing but it was not entered into evidence.

[5] During his opening remarks, Smith spoke of another incident that occurred on December 13, 2022, where Gibson-Wright asked the clerk whether a meeting would be held later that evening. Smith, however, did not reference this incident again during the evidentiary portion of the hearing.

Smith subsequently filed a petition for a temporary protective order against Gibson-Wright, alleging that "on or about" December 10, 2022, Gibson-Wright harassed or threatened him, which put him in fear for his safety. Gibson-Wright answered the petition and counterclaimed for attorney fees and litigation expenses. Following the hearing, the trial court entered an order granting Smith's petition and imposing a 12-month protective order, determining that Gibson-Wright committed stalking under OCGA § 16-5-90 and placed Smith in reasonable fear for his safety. The trial court enjoined Gibson-Wright from committing any act that would constitute a violation of OCGA § 16-5-90 and from harassing and intimidating Smith and his immediate family. The trial court also prohibited Gibson-Wright from having any contact with Smith and his immediate family,[6] enjoined her from approaching Smith "within 100 yards," and denied her claim for attorney fees and litigation expenses. This appeal followed.[7]

---

[6] The order allows Gibson-Wright to "attend any and all official meetings of the Alapaha city council or other official duties of the council without violating [the] order."

[7] We note that the protective order in this case is directly appealable because it does not involve a domestic relations matter. *Bodi*, supra, 358 Ga. App. at 268 n.3. Furthermore, although the protective order is limited in its duration, the issues concerning the order are not moot because they are capable of repetition yet evade review. *Elgin v. Swann*, 315 Ga. App. 809, 810 (1) (728 SE2d 328) (2012).

1. First, Gibson-Wright argues that the evidence was insufficient to show that she committed stalking under OCGA § 16-5-90. Specifically, she argues that (1) she did not engage in any conduct towards Smith on December 10, 2022, which was the date alleged in his petition, that would constitute stalking; (2) Smith was not placed in reasonable fear for his safety; (3) she did not engage in a pattern of harassing and intimidating behavior; and (4) there was no evidence that her conduct served no legitimate purpose. We conclude that the evidence was insufficient to show that Gibson-Wright placed Smith in reasonable fear for his safety as required to establish the offense of stalking.[8]

OCGA § 16-5-94 (a) permits a party to seek a protective order by filing a petition alleging conduct constituting stalking under OCGA § 16-5-90. "To be entitled to a protective order based on stalking, the petitioner must establish the elements of the offense by a preponderance of the evidence." (Citation and punctuation omitted.) *Bodi*, supra, 358 Ga. App. at 269. "In reviewing the sufficiency of the evidence supporting a stalking protective order, we do not weigh the evidence

---

[8] In light of this conclusion, we do not address Gibson-Wright's remaining claims regarding the insufficiency of the evidence.

or assess witness credibility, and we construe the evidence in favor of the findings of the trier of fact." (Citation omitted.) Id.

"The offense of stalking is committed when a person follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person." (Citation and punctuation omitted.) *Bodi*, supra, 358 Ga. App. at 269.

> The term "harassing and intimidating" means a knowing and willful course of conduct directed at a specific person which causes emotional distress by placing such person in *reasonable fear* for such person's safety or the safety of a member of his or her immediate family, by establishing a pattern of harassing and intimidating behavior, and which serves no legitimate purpose.

(Citation omitted; emphasis supplied.) Id. "Of course, it is not necessary to show an 'overt threat of death or bodily injury' to establish stalking. Nor is it necessary that the threat be explicit." (Citation omitted.) Id. at 270 (b). Indeed, "[e]ven behavior that is not overtly threatening can provide the requisite degree of intimidation and harassment if is it ongoing, repetitious, and engaged in despite the communicated wishes of the victim." (Citation omitted.) *Moran v. State*, 334 Ga. App. 765, 768 (1) (a) (780 SE2d 529) (2015). Nevertheless, an essential element of stalking under

7

OCGA § 16-5-90 is that the defendant's actions place the victim in *reasonable fear* for his safety. Id. See also *Bruno v. Light*, 344 Ga. App. 799, 804 (1) (c) (811 SE2d 500) (2018) ("Under the stalking statutes, harassment and intimidation refer to conduct that at a minimum places the victim in reasonable fear for h[is] safety or the safety of h[is] immediate family.") (citation and emphasis omitted). Thus, where the evidence fails to show that the defendant engaged in conduct that placed the victim in reasonable fear for his safety, a trial court abuses its discretion by granting a protective order. *Bodi*, supra, 358 Ga. App. at 270-271 (b).

Applying the aforementioned principles here, we conclude that, even under the preponderance of the evidence standard, the evidence failed to establish that Gibson-Wright placed Smith in reasonable fear for his safety through a pattern of harassing and intimidating conduct. As to the first incident, an open records request by Gibson-Wright, a member of the city council, inquiring as to whether Smith was the city manager or the mayor's advisor could not have put Smith in reasonable fear for his safety. As to the second incident of Gibson-Wright asking Tabor whether Smith was in his office, Smith testified that the incident was not a basis for the petition. Yet, even in that instance, Smith testified that Gibson-Wright did not threaten or harm him and that she left city hall after learning that he was present. Regarding the third and

fourth incidents of Gibson-Wright asking the city hall clerk whether Smith was an employee and in his office and filming the clerk's response and Smith's vehicle, Smith offered no testimony that this conduct put him in reasonable fear for his safety.

Regarding the ribbon-cutting ceremony where Smith turned Gibson-Wright away from group pictures, Smith testified that she did not harass, threaten, or cause him any other problems and that she did not have any further contact with him at the ceremony after he turned her away from the group pictures. Although Smith testified that Atkins confronted him after he prevented Gibson-Wright from being included in the pictures, there was no evidence that Gibson-Wright and Atkins were acting in concert during that confrontation. Moreover, even though Smith testified generally that he feared Gibson-Wright, when pressed regarding the incidents, he testified that Gibson-Wright did not threaten, harass, or harm him. Thus, it cannot be said that these incidents placed Smith in reasonable fear for his safety. We are fully aware that

> it is not this Court's function to second-guess the trial court in cases such as this, which turn largely on questions of credibility and judgments. The trial court is in the best position to make determinations on these issues, and we will not overrule its judgment if there is any reasonable evidence to support it. In addition, the trial court is not required to believe any testimony offered, whether or not it is rebutted.

9

(Citation omitted.) *Bland v. Bland*, 347 Ga. App. 273, 277 (1) (819 SE2d 78) (2018). Nevertheless, a trial court's grant of a protective order must still be supported by some reasonable evidence. *Hayward v. Wisner*, 369 Ga. App. 100 (892 SE2d 398) (2023). Here, although the trial court could have found that Gibson-Wright's conduct was obnoxious or juvenile, the evidence is insufficient to show that she placed Smith in reasonable fear for his safety under OCGA § 16-5-90. See *Murphy v. O'Keefe*, 348 Ga. App. 344, 344-346 (822 SE2d 839) (2019) (reversing the trial court's issuance of a protective order because the evidence that the defendant visited the victim at her job at a restaurant on multiple occasions, spoke with the victim's manager about taking her out, and left a note for the victim was insufficient to show harassing and intimidating behavior); *Martin v. Woodyard*, 313 Ga. App. 797, 797-799 (723 SE2d 293) (2012) (evidence failed to show that the defendant engaged in harassing and intimidating conduct because although the defendant sent "profanity-laden emails" to the victim and contacted another individual whom the victim had "expressed fear" about, the emails did not contain any threats or cause the victim to fear for his safety, and there was no evidence that the defendant acted in concert with the other individual); *Sinclair v. Daly*, 295 Ga. App. 613, 615-616 (672 SE2d 672) (2009) (evidence insufficient to show that defendant placed victim in reasonable fear for his

10

safety where the victim did not testify that the incidents that led him to seek a protective order caused him to fear for his safety, and no reasonable person would have feared for their safety based on the defendant's "hostile and assertive demeanor" and threats of filing a lawsuit); compare *Hayward*, supra, 369 Ga. App. at 101 (affirming trial court's issuance of a protective order where the respondent angrily ran onto the petitioner's property and screamed at her and her associates, and the petitioner testified that she did not feel safe to go outside when the respondent was present). Therefore, we conclude that the trial court abused its discretion by granting Smith's petition for a protective order.

2. Next, Gibson-Wright argues that the trial court erred by denying her claim for attorney fees under OCGA §§ 9-15-14 and 13-6-11.

(a) As to Gibson-Wright's claim for attorney fees under OCGA § 13-6-11, the Supreme Court of Georgia has been clear that in order for a party to assert a counterclaim for attorney fees and expenses under OCGA § 13-6-11, "that party must also have another claim that is separate, or free-standing, from the OCGA § 13-6-11 claim." *SRM Group, Inc. v. Travelers Property Cas. Co. of America*, 308 Ga. 404, 406 (2) (841 SE2d 729) (2020); see also *Premier Residential SE, LLC v. Silverstone Residential, LLC*, 368 Ga. App. 142, 151 (3) (889 SE2d 325) (2023) ("OCGA § 13-6-

11

11 does not create an independent cause of action.") (citation omitted). Here, in her response to Smith's petition, Gibson-Wright did not assert any other counterclaim separate from her claim for attorney fees. Therefore, she was not entitled to attorney fees under OCGA § 13-6-11.

(b) Second, to the extent that Gibson-Wright sought attorney fees under OCGA § 9-15-14, this statute permits a trial court to award attorney fees against a party who asserted a "claim, defense, or other position with respect to which there existed such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the asserted claim, defense, or other position." OCGA § 9-15-14 (a). A trial court may also assess attorney fees if, among other things, it determines that a party brought or defended an action that "lacked substantial justification" which the statute defines as "substantially frivolous, substantially groundless, or substantially vexatious." OCGA § 9-15-14 (b). Because we determined in Division 1 that the evidence was insufficient to show that Gibson-Wright committed the offense of stalking under OCGA § 16-5-90 to support the issuance of a protective order, we vacate the trial court's order denying Gibson-Wright's claim for attorney fees and we remand the case to the trial court for reconsideration of this issue. See *Fulton County v. SOCO Contracting Co., Inc.*, 343

12

Ga. App. 889, 900-901 (3) (808 SE2d 891) (2017) (vacating the trial court's denial of the county's attorney fees claim and remanding the issue for reconsideration where it was determined that the trial court erred by denying the county's motion for summary judgment).

In sum, we reverse the trial court's order granting Smith's petition for a temporary protective order. We also vacate the trial court's order denying Gibson-Wright's claim for attorney fees and remand the case to the trial court for reconsideration of her attorney fees claim.

*Judgment reversed in part, vacated in part, and case remanded with direction.*

*Mercier, C. J., and Hodges, J., concur.*